**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOLLIE KING, et al., Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANN PATLA, Director, Illinois Department of Public Aid, et al.,<br><br>Defendants, | ) | |
| ANITA ALVAREZ, State's Attorney of Cook County, THOMAS DART, Sheriff of Cook County, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, TIMOTHY EVANS, Chief Judge of the Cook County Circuit Court, and COOK COUNTY,<br><br>Third Party-Intervenors.<br><br>v.<br><br>FELICIA F. NORWOOD, Director of the Department of Healthcare and Family Services,<br><br>Defendant. | ) | Case No. 92 C 1564<br><br>Honorable Judge George W. Lindberg |

**THIRD PARTY-INTERVENORS PETITION TO INTERVENE AS OF RIGHT, OR ALTERNATIVELY, BY PERMISSION**

Third Party-Intervenors, ANITA ALVAREZ, State's Attorney of Cook County, THOMAS DART, Sheriff of Cook County, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, TIMOTHY EVANS, Chief Judge for the Circuit Court of Cook County, and

COOK COUNTY (collectively "Intervenors") hereby move this Court for leave to intervene in this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24(a)(2), or in the alternative, Fed. R. Civ. P. 24(b). Intervenors have an interest in this action that would be significantly impaired if they are not afforded the opportunity to represent their interests. Accordingly, Intervenors respectfully request the Court grant the instant motion for leave to intervene and seek leave to file the proposed Motion to Enforce the Consent Decree, attached hereto as Exhibit B.

## STATEMENT OF FACTS

### A. Complaint Filed Against the Director of Public Aid

On March 3, 1992, parents/guardians residing in Cook County filed the instant suit against the Illinois Department of Public Aid ("Department"), now known as the Illinois Department of Healthcare and Family Services, and its directors, to obtain child support enforcement services in conformance with Title IV-D. *See* CM/ECF Docket Entry no. 215, *King v. Bradley, et al.* Consent Decree, attached hereto as Exhibit A at §2. The Department's Title IV-D Program is the Child Support Enforcement Program administered pursuant to 42 U.S.C. § 651 *et seq*., by which the State of Illinois receives federal funding in the form of reimbursements for a percentage of state child support enforcement expenditures, including the payments the State makes to the County Units for their Title IV-D services. 42 U.S.C. § 655. The Northern District of Illinois certified a class of plaintiffs on September 30, 1995, that was defined as those participants in the Cook County Title IV-D program who were receiving neither the total amount of child support payments to which they were entitled nor child support enforcement services compliant with federal requirements. *See* Ex. A at §2.

**B. The Consent Decree**

On January 5, 2000, the Department entered into a Consent Decree to "administer the IV-D program in Cook County in such a manner as to produce certain results." *See* Ex. A at §4. The Consent Decree outlines the responsibilities of the Department in detail. For example, in Section 4(a), the Department agreed to service income withholding notices within 15 days of a court date or administrative hearing order. *See id*. at §4(a). In Section 4(d), the Department agreed to take "other enforcement actions" in cases of child support delinquencies. *See id*. at §4(d). Other enforcement actions include the referral to a legal representative to enforce child support orders. *See id*. at §3(k).

The Consent Decree specifically dictates that this Court retains jurisdiction to supervise and enforce compliance with the provisions of the Consent decree. *See id*. at §11.

**C. The Department Delegated Certain Child Support Enforcement Functions to Intervenors.**

The Department delegated certain child support enforcement functions in Cook County to the Intervenors in a series of Intergovernmental Agreements ("IGAs"). The Department contracted separately with the Cook County State's Attorney's Office, the Chief Judge's Office, the Clerk of the Circuit Court of Cook County and the Cook County Sheriff's Office to provide legal enforcement of its child support program within Cook County, Illinois. *See* the State of Illinois Intergovernmental Agreement between the Department and the Cook County State's Attorney's Office, attached hereto to Exhibit B as Exhibit 1; the State of Illinois Intergovernmental Agreement between the Department and the Cook County Chief Judge's Office, attached hereto to Exhibit B as Exhibit 2; the State of Illinois Intergovernmental Agreement between the Department and the Cook County Clerk of the Circuit Court, attached hereto to Exhibit B as Exhibit 3; and the State of Illinois Intergovernmental Agreement between

the Department and the Cook County Sheriff's Office, attached hereto to Exhibit B as Exhibit 4 (collectively the entities will be referred to as "County Units"). The IGAs set forth each County Units' duties and responsibilities with respect to the administration of the Child Support Enforcement Program pursuant to Title IV-D as well as the payment and reimbursement obligations of the Department.

For example, the Cook County State's Attorney's Office is responsible for, among other things, acting upon each referral from the Department for legal action within thirty calendar days after receipt, which includes seeking orders for support and seeking enforcement action upon delinquency of support. *See* Ex. B, Ex. 1 at §5.3.1; *see also* the Affidavit of Zeophus Williams, attached hereto to Ex. B as Exhibit 5 at ¶¶3-6. The Cook County Sheriff's Office is delegated to serve within Cook County, summons, subpoenas, writs, orders or notices to withhold income for child support or notices of support obligation. *See* Ex. B, Ex. 4 at §5.3.1; *see also* the Affidavit of Alexis Herrera, attached hereto to Ex. B as Exhibit 6 at ¶¶4-5. Specifically, the IGA with the Cook County Circuit Court Chief Judge employs hearing officers, clerks and support staff who are specifically assigned to the child support enforcement program to expedite the resolution of parentage and child support cases. *See* Ex. B, Ex. 2 at §§5.3.2-5.3.7; *see also* the Affidavit of James Anderson, attached hereto to Ex. B as Exhibit 7 at ¶¶4-5. Finally, an example of the duties of the Cook County Clerk of the Circuit Court set forth in the IGA include, but are not limited to, providing the Department with copies of support orders, paternity orders, payment ledgers, docket sheets, and other court records requested by the Department. *See* Ex. B, Ex. 3 at §5.3.3; *see also* the Affidavit of Richard Abrams, attached hereto to Ex. B as Exhibit 8 at ¶¶4-5.

**D. The Department's Failure to Fund County Units' Title IV-D Enforcement Activities is a Violation of the Consent Decree.**

Nationally, the federal government underwrites approximately two-thirds of the cost of child support enforcement programs, with the remaining portion provided by states. 42 USC §655(a). With respect to the Title IV-D Child Support Enforcement Program administered in Cook County, Cook County, on behalf of the County Units, typically receives reimbursements for its Title IV-D enforcement activities from the State of Illinois after each County Unit submits expenditure reports to the Department. *See* Ex. B, Ex. 5 at ¶8; *see also* the Affidavit of Tanya Anthony, attached hereto to Ex. B as Exhibit 9 at ¶¶4-6. Subsequently, the State then forwards its expenditure reports to the federal government. *See* Ex. B, Ex. 5 at ¶9. Ultimately, the federal government then sends federal funding to the State in the form of reimbursements for a percentage of the State's expenditures so long as the State's program has substantially complied with the requirements under Title IV-D. *See* Ex. B, Ex. 5 at ¶10. Federal financial participation is 66 percent of the administrative costs incurred by the State pursuant to its approved Title IV-D plan. 45 U.S.C. 655(a)(2)(c); *see also id.*

In reliance upon the IGAs, Cook County budgeted $18,594,125 for the operation of the Child Support Enforcement Program for the County in fiscal year 2016 (December 1, 2015 through November 30, 2016). *See* Ex. B, Ex. 9 at ¶7. This amount is shared between the County Units and includes the salaries of 189 County employees. *See id*. at ¶8.

As of the date of this filing, the State of Illinois has not passed a budget appropriation for the State fiscal year (July 1, 2015 through June 30, 2016). *See* Ex. B, Ex. 5 at ¶11; *see also* Ex. B, Ex. 9 at ¶9. As a result, since July 1, 2015, the State of Illinois has not reimbursed the County Units for its Title IV-D expenditures nor has it, upon information and belief, forwarded its expenditure reports to the federal government. *See* Ex. B, Ex. 5 at ¶¶12-13; *see also* Ex. B, Ex. 9

at ¶10. Consequently, the federal government has not made any reimbursements for child support enforcement expenditures to the State for the County Units' Title IV-D activities. *See* Ex. B, Ex. 5 at ¶13.

The Consent Decree specifically provides that the Department's delegation or contracting of performance of Title IV-D activities to another governmental or private entity shall not affect the Department's responsibilities under the Decree. *See* Ex. A at §3(a). Because at stake is the well-being of impoverished children in Cook County, the County has continued to fund the Child Support Program, notwithstanding the failure of the State to reimburse the County for such expenses. *See* Ex. B, Ex. 9 at ¶12. As of March 1, 2016, the amount outstanding from the Department since July 1, 2015 is $9,151,332.60. *See id.* at ¶11. The unanticipated and continuous funding of the Child Support Enforcement Program by Cook County has significantly impacted the County's operating budget since July 1, 2105. *See id.* at ¶12. Budgetary holdbacks have been implemented in budgets county-wide due to the millions of dollars spent funding the Title IV-D program since July 2015. *See* Ex. B, Ex. 9 at ¶12; *see also* Ex. B, Ex. 6 at ¶6. Accordingly, Cook County can no longer finance the obligations that by law are those of the State of Illinois. *See* Ex. B, Ex. 9 at ¶12. The Department is in jeopardy of causing a default under the Consent Decree, where the contracted service providers (Intervenors) will no longer be able to provide their services as set forth in the Consent Decree. *See* Ex. B, Ex. 5 at ¶¶4-6, 14; *see also* Ex. B, Ex. 6 at ¶¶5, 7; *see also* Ex. B, Ex. 7 at ¶¶5-6; *see also* Ex. B, Ex. 8 at ¶¶5-6; *see also* Ex. B, Ex. 9 at ¶¶12-13. Thus, the lack of funding will cause the County Units to reduce, and in many instances terminate, the child support enforcement services for Cook County families. *See id.* To prevent the interruption of the current levels of child support enforcement activities by the County Units, the Intervenors seek leave to intervene in the present suit for the

purpose of filing a Motion to Enforce the Consent Decree (*see* Exhibit B, attached hereto), which requests this Court for an order requiring the Defendants to comply with the Consent Decree and fund Cook County's Title IV-D activities.

## ARGUMENT

### A. Intervention as a Matter of Right Pursuant to Fed. R. Civ. P. 24(a)(2).

The Federal Rules of Civil Procedure contemplate two types of intervention: permissive and as a matter of right. Rule 24(a) governs intervention as of right, and provides that:

> [o]n timely motion, the court must permit anyone to intervene who…(2) claims an interest relating to the …transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). This translates into four requirements: (1) the applicant must have an "interest" in the transaction which is the subject of the action; (2) disposition of the action as a practical matter may impeded or impair the applicant's ability to protect that interest; (3) the application is timely; and (4) no existing party adequately represents the applicant's interest. *Security Ins. Co. of Harford v. Schipporeit, Inc*., 69 F.3d 1377, 1380 (7th Cir. 1995); *Reich v. ABC/York-Estes Corp*., 64 F.3d 316, 321 (7th Cir. 1995). When considering a motion to intervene, the court "must accept as true the non-conclusory allegations of the motion." *Reich*, 64 F.3d at 321. "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." *Id*. at 321 (citing *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)). Each intervention case is "highly fact specific and tend[s] to resist comparison to prior cases." *Reich*, 64 F.3d at 321.

#### 1. <u>Intervenors have a significant interest in the action that will be impaired absent intervention</u>.

"The 'interest' required by Rule 24(a)(2) has never been defined with particular precision." *Security Ins. Co. of Hartford*, 69 F.3d at 1380. The would-be intervener's interest must, however, be a "direct, significant, legally protectable one. . . . It is something more than a mere 'betting' interest, but less than a property right. . . ." *Id*. at 1380-81 (citations omitted). An intended third-party beneficiary interest in a consent decree satisfies Rule 24(a)'s interest prong. *See South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985). In *South*, the Seventh Circuit found that an inmate was an intended beneficiary with a right to intervene under Rule 24(a)(2) and enforce a consent decree between a former inmate and the State of Illinois involving the operation of prison law libraries. *South*, 759 F.2d at 612. The Court found that the decree's continued regulation of the library was to benefit current and future inmates who could avail themselves of the decree's enforcement provisions as third-party beneficiaries. *Id*. Accordingly, the Seventh Circuit held that the inmate had satisfied the first two requirements of Fed. R. Civ. P. 24(a)(2). *Id*.

Similarly, in the instant case, the Intervenors have third-party beneficiary interests in the consent decree where absent enforcement, default by the Department is imminent. The Consent Decree obligates the Department to administer the Illinois Title IV-D program in Cook County in a manner as set forth in detail within the Consent Decree. Contracting the performance of Title IV-D activities was contemplated in the decree, which specified that such contracting would have no effect on the Department's responsibilities under the Consent Decree. *See* Ex. A at §3(a). The continued administration of the Consent Decree is in jeopardy where the Department has failed to appropriate funds to maintain performance of the Department's responsibilities by the County Units. *See* Ex. B, Ex. 5 at ¶¶4-6, 14; *see also* Ex. B, Ex. 6 at ¶¶5-7; *see also* Ex. B, Ex. 7 at ¶¶4-6; *see also* Ex. B, Ex. 8 ¶¶4-6; *see also* Ex. B, Ex. 9 at ¶¶7-13. Following

submission of actual expenditures by the contracted service providers, the IGAs require the Department to reimburse the contracted providers for their performance of all duties and obligations under the IGA, which are the duties and obligations, set forth under the Consent Decree as well. (*See* Ex. B, Exs. 1-4 at §§6.1-6.3; *see also* for example Ex. A at §4(a), §4(b) and §4(d) and Ex. B, Ex. 1 at §5.3.1, 5.3.5(a), 5.3.6, 5.3.8-5.3.11, 5.3.13, 5.3.19; Ex. B, Ex.2 at §§5.3.2-5.3.7, 5.3.10. 5.3.16). Consequently, without the funding by the State, Intervenors will be unable to comply with the mandated duties and responsibilities under the Consent Decree. *See* Ex. B, Ex. 5 at ¶¶4-6, 14; *see also* Ex. B, Ex. 6 at ¶¶5-7; *see also* Ex. B, Ex. 7 at ¶¶4-6; *see also* Ex. B, Ex. 8 ¶¶4-6; *see also* Ex. B, Ex. 9 at ¶¶7-13. Clearly, the Intervenors have an interest in the action and will be unable to protect that interest absent intervention.

Further, the Intervenors' significant interest is further supported by the fact that the Intervenors and their personnel may be subject to liability for violating any duties under specified sections of Title IV-D. *See Lafine v. County of Cook*, 2001 U.S. Dist. LEXIS 25187 (N.D. Ill. 2001)(district court denied a motion for judgment on the pleadings because plaintiff alleged a permissible claim against Cook County and the assistant state's attorney who allegedly failed to enforce a lien on her ex-husbands' assets in violation of specific sections of Title IV-D). Therefore, if the provisions of the Consent Decree are not met by the Department via the Intervenors due to lack of funding by the State the Intervenors may be subject to legal action. Consequently, Intervenors have satisfied both the interest and impairment requirements of Rule 24(a).

2. <u>The Intervenors' interests are not adequately represented by existing parties.</u>

Due to the nature of the IGAs in effect and the implications on the Consent Decree, the Intervenors' interests are not "adequately represented by existing parties" at this time. While

the Plaintiffs as well as the Intervenors may have parallel goals toward compliance with the Consent Decree, no existing party adequately represents the Intervenors interest in ensuring that their expenditures are reimbursed by the State and that the State seeks reimbursement from the federal government in order to gain substantial reimbursement for their administrative costs as well.

3. The Intervenors timely applied for intervention after learning its interests were adversely affected.

The only remaining criterion to be met is that of timeliness. The test for timeliness is "essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321 (citation omitted). The timeliness determination "requires a consideration of all the circumstances of a case and not just the point to which the suit has progressed." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991). The *Ragsdale* court outlined four factors for consideration: "(1) the length of time the intervener knew or should have known of his or her interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervener if the motion is denied, and (4) any unusual circumstances." *Id*.

Despite the submission of incurred expenditures by the Intervenors, the Department stopped reimbursing the Intervenors for their services after June 2015. *See* Ex. B, Ex. 9 at ¶10. However, Cook County has continued to fund and reimburse the expenditures since that time, even though Cook County did not appropriate funds for this program in its annual operating budget. *See id*. at ¶¶6-8, 11-12. The impact of the State's failure to fund the IV-D enforcement program is imminent and significant. Foremost, the County was forced to impose budgetary holdbacks on all County departments and the offices of the separately elected officials that it

funds, which will impact each of the four County Units' operating budgets and the units/departments responsible for providing Title IV-D services. *See* Ex. B, Ex. 6 at ¶6; *see also* Ex. B, Ex. 9 at ¶12. More significantly, all of the IGAs in effect will expire on June 30, 2016. *See* Ex. B, Exs. 1-4. In the absence of funding by the State for child support enforcement expenditures, the County Units will not be able to renew the Intergovernmental Agreements. *See* Ex. B., Ex. 5 at ¶14; *see also* Ex. B, Ex. 6 at ¶7; *see also* Ex. B, Ex. 7 at ¶6; *see also* Ex. B, Ex. 8 at ¶6; *see also* Ex. B, Ex. 9 at ¶13. As a result, each County Unit will be forced to terminate Title IV-D services and/or terminate positions that exclusively handle Title IV-D activities. *See Ex. B, Ex. 5 at ¶¶4-6, 14; see also Ex. B, Ex. 6 at ¶¶5, 7; see also Ex. B, Ex. 7 at ¶¶5-6; see also Ex. B, Ex. 8 at ¶¶5-6; see also Ex. B, Ex. 9 at ¶¶12-13.* The termination of services and positions will cause dramatic delays in the performance and efficiency of child support related services county-wide. *See id*.

As soon as this dire scenario was known to the Intervenors, the current action was filed. There is no prejudice to the Department for any delay, whereas the prejudice to the Intervenors would be significant if the Intervenors were not allowed to intervene and remedy future violations of the consent decree. Obviously, the instant circumstances are unusual and warrant the intervention.

**B. In the Alternative, the Intervenors Seek Permission to Intervene.**

Should this Court find that the Intervenors have not established intervention as matter of right, then Intervenors seek permission to intervene pursuant to Fed. R. Civ. P. 24(b). Fed. R. Civ. P. 24(b) provides in pertinent part that "on timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order,

requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). As explained more fully *supra*, the initial action brought by the class action Plaintiffs alleged the Department failed to comply with federal requirements under the Title IV-D child support enforcement program. The Consent Decree was entered to resolve all of the issues in the case. The Intervenors are governmental officers, three of which are state officers, who seek intervention to enforce the Consent Decree in order to require compliance with the Department's obligations under the Title IV child support enforcement program. Further, the Intervenors provide child support services for the Plaintiff class members and have an interest in protecting the children of Cook County who depend on these services for their survival. *See SEC v. United State Realty & Improvement Co.*, 310 U.S. 434 (1940) (where permissive intervention by the Commission to protect the public interest in an arrangement proceeding under Chapter XI of the Bankruptcy Act was upheld); *see also Boehnen v. Walston & Co.*, 358 F. Supp. 537, 542 (S.D. 1973) ("[t]he whole thrust of…permitting government intervention where a statute is involved, 'is in the direction of allowing intervention liberally to governmental agencies and officers to speak for the public interest.'" Citing 7A C. Wright and A. Miller, Federal Practice and Procedure Sec. 1912 (1972)). Thus, if this Court should find the Intervenors are not permitted as a matter of right to intervene, the Intervenors have established that they should be permitted to intervene to protect their ongoing status in the Title IV-D child support enforcement program within Cook County.

## CONCLUSION

WHEREFORE, for the foregoing reasons the Intervenors respectfully request that the Court grant their motion to intervene as a matter of right, and/or in the alternative grants its permission to intervene, so it may submit the proposed attached Motion to Enforce the Consent

Decree, along with such other and further relief as the Court may deem just and proper from the circumstances.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

*/s/ Sisavanh Baker*
Attorney for Intervenors
Assistant State's Attorney
Municipal Litigation Unit
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-7998

*/s/ Jill V. Ferrara*
Attorney for Intervenors
Assistant State's Attorney
Municipal Litigation Unit
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-4320